**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| HENNA CARDENAS, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>SPINNAKER RESORTS, INC., a Florida Corporation,<br><br>               Defendant. | Case No. 9:18-cv-00761-BHH |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SPINNAKER RESORTS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

i

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

III.  ARGUMENT ....................................................................................................6

    A.    Spinnaker's Motion to Dismiss first fails because the issues between the two proceedings are not identical--the test for agency for jurisdictional purposes differs meaningfully from the test used to determine "on behalf of" liability for calls made under the TCPA. ................................................................................7

    B.    The prior court never reached a decision on the merits of the TCPA violations—thus, it cannot be reasonably said that the issue has been actually determined. ......9

    C.    Since the issue at hand was not presented to the prior court it follows that it could not have been a critical and necessary part of the previous decision....................10

    D.    Plaintiff does not dispute that the prior judgment was final and valid. .................11

    E.    Because the question of whether Spinnaker could be held liable for the calls placed by its potential agents was not at issue in the New Jersey case, Plaintiff has not been afforded a fair opportunity to litigate that issue. .....................................11

IV.   CONCLUSION................................................................................................12

# TABLE OF AUTHORITIES

## *CASES*

*Allen v. McCurry*, 449 U.S. 90 (1980) ........................................................................11

*Combs v. Richardson*, 838 F.2d 112 (4th Cir. 1988) ...................................................10

*Cudmore v. Howell*, 232 B.R. 335 (E.D.N.C. 1999) ...................................................11

*Garrett v. Ozmint*, No. C.A. 6:08-0399-MHMWM, 2008 WL 5244542
        (D.S.C. Dec. 15, 2008) .......................................................................................7

*Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ...................9

*Jackson v. Lightsey*, 775 F.3d 170 (4th 2014) ...............................................................7

*Martin v. American Bancorporation Retirement Plan*, 407 F.3d 643 (4th Cir. 2005) ..............7, 10

*Miller Building Corporation v. NBBJ North Carolina, Inc.*, 129 N.C.App. 97, 497 S.E.2d 433
        (1998) ................................................................................................................8

*Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation
        Programs, United States Department of Labor*, 583 F.2d 1273 (4th Cir. 1978) .....8

*S.E.C. v. Resnick*, 604 F.Supp.2d 773 (D. Md. 2009) ..................................................11

*Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 291 (4th Cir. 1998) ......................2, 7

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727 (N.D. Ill. 2014*)* ...............................9

## *STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES*

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* .......................... *passim*

Fed. R. Civ. P. 41 .......................................................................................................11

## I.    INTRODUCTION

This case challenges harassing telemarketing calls that Defendant Spinnaker Resorts, Inc. ("Defendant" or "Spinnaker") allegedly makes through its agents in an effort to sell its "timeshare" properties. (*See* "Class Action Complaint" ¶¶1, 13-14.) Plaintiff Henna Cardenas received multiple autodialed and/or pre-recorded calls from Spinnaker (through its agents) without her prior express consent—conduct she claims violates the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, 47 C.F.R. § 64.1200 ("TCPA").

Rather than acknowledge its improper conduct, let alone take steps to fix it, Spinnaker moves to dismiss on grounds of collateral estoppel/issue preclusion. (Def. Mot. 1-8.) Its argument goes as follows: on May 2, 2016, Plaintiff's prior complaint challenging these same calls was filed against Spinnaker and two of its subsidiaries in the District of New Jersey. Spinnaker moved to dismiss for lack of personal jurisdiction asserting that, "All telemarketing activities directed to potential customers are conducted by Spinnaker's subsidiary corporations," or "through [the subsidiaries'] contracts with independent third-party vendors that perform marketing and telemarketing services." (Matthews Supp. Decl., ¶ 7, a true and accurate copy of which is attached hereto as Ex. A.) The New Jersey court agreed, finding that "the Resort Sales Companies are not agents of Defendant for jurisdictional purposes," that "even if they were, Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question," which came instead from the subsidiaries' contractors. (*Cardenas v. Spinnaker*, Slip Copy, 2017 WL 3315285 at *5-6 ("Order"), a true and accurate copy of which is attached hereto as Ex. B.) Despite the fact that the New Jersey court expressly adjudicated agency solely for jurisdictional purposes, Spinnaker asserts that the consideration of such issues in that case bars the supposed "re-litigation" of such questions here.

1

Spinnaker's 8-page Motion to Dismiss should be denied. Plaintiff does not claim that Spinnaker made the calls directly; rather, the instant Complaint claims that Spinnaker made the calls through its agents. Critically, the test for whether a principal may be held liable for its agent's calls under the TCPA is a wholly separate and distinct inquiry—requiring the analysis of entirely different elements—than the test for whether Spinnaker's subsidiaries could've been considered "agents of Defendant for jurisdictional purposes." As such, and despite the fact that Spinnaker carries the burden of showing that overlapping issues exist between the New Jersey case and this matter and that such questions are *identical*, the issues are actually quite dissimilar. *See Sedlack v. Braswell Servs. Group, Inc*., 134 F.3d 291, 224 (4th Cir. 1998).

Spinnaker's failure to present identical issues renders it incapable of satisfying the remaining elements of *Sedlack*. That is, Spinnaker cannot show that the issue of whether it can be held liable for its agent's calls under the TCPA was "actually resolved" in the New Jersey case, that Spinnaker's potential liability under the TCPA was "critical and necessary" to the prior proceeding, or that Cardenas had any opportunity to litigate the issue of Spinnaker's agency for TCPA purposes, as opposed to for jurisdictional purposes, in the New Jersey case.

Put simply, the Court should reject Spinnaker's sleight-of-hand. Agency under the TCPA is subject to a different standard than the test the New Jersey court was tasked with employing when adjudicating its own authority to hear the case on its merits. As such, and as explained further below, the Court should deny Spinnaker's Motion to Dismiss based on issue preclusion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Spinnaker is a real estate company that owns and sells timeshares. (Declaration of Basil Matthews ("Matthews Decl.") ¶ 7, a true and accurate copy of which is attached hereto as Ex. C.) Spinnaker is a Florida corporation with its headquarters in Hilton

Head, South Carolina. (Compl. ¶ 7.) To increase its customer base and sell more timeshares, Spinnaker has turned to a massive campaign featuring unsolicited telemarketing calls. (*Id.* ¶ 11.)

Defendant is fully aware that unsolicited telemarketing calls are being made to consumers' residential landlines through its own efforts and the efforts of its agents. (*Id.* ¶ 14.) The Complaint expressly alleges that:

> 13.    Defendant and/or their agent places repeated and unwanted calls to consumers whose phone numbers are registered with the National Do Not Call Registry. Consumers register their phone numbers on the Do Not Call list for the express purpose of avoiding unwanted telemarketing calls like those alleged here. Defendant does not check its numbers against the Do Not Call list, and does not remove from its telemarketing lists the numbers of consumers who are on the Do Not Call list. Furthermore, Defendant and/or their agents are not processing requests made by the called persons to not be called once they have been called.

> 14.    At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing calls were and are being made to consumers' residential landlines through its own efforts and their agents.

In Plaintiff Cardenas' case, in or around April 2015, Plaintiff—who already registered her landline phone on the Do Not Call Registry—began receiving multiple calls during the day on her landline telephone from various telephone numbers. (*Id.* ¶ 21.) Plaintiff has received numerous telemarketing calls from at least six different numbers, all of which identified themselves as "Spinnaker Resorts." (*Id.* ¶ 21.) Each time Plaintiff received a call from Defendant, she informed the caller that she was on the Do Not Call Registry and asked the operator to stop calling her. (*Id.* ¶ 23.) In a bid to end the relentless harassment, Plaintiff attempted to return the calls but she was met with only non-working telephone numbers. (*Id.* ¶ 26.) Despite these attempts to stop the calls, Defendant or its agents continued to call Plaintiff--often multiple times per day. (*Id.* ¶ 21.)

***Prior Litigation and Ultimate Dismissal for Lack of Personal Jurisdiction***

On May 2, 2016, Cardenas filed a prior lawsuit against Spinnaker in the District of New

3

Jersey. (*See* "*Cardenas v. Spinnaker Resorts, Inc.* (D.N.J.) Docket," a true and accurate copy of which is attached hereto as Ex. D, Dkt. 1.) On July 8, 2016, Spinnaker moved to dismiss arguing that it lacks sufficient minimum contacts with New Jersey and that it doesn't actually perform any telemarketing itself (rather, its agents or its contractors make the calls). (Ex. D, Dkt. 9.)

On August 3, 2016, following a full briefing schedule, the Court Ordered the Parties to engage in jurisdictional discovery tailored to Spinnaker's relationship with two of its subsidiaries (who it claimed made phone calls and engaged in telemarketing) to determine whether the subsidiaries could be considered Spinnaker's agents for jurisdictional purposes. (Ex. D, Dkt. 13-14.)

Plaintiff was granted approximately four months to complete jurisdictional discovery limited to Defendant's and two of Defendant's subsidiaries', Resort Sales Missouri, Inc.'s ("RSM") and Resort Sales by Spinnaker, Inc.'s ("RSS"), contacts with New Jersey. (Ex. D, Dkt. 23-24.) Following limited discovery, Defendant renewed its motion to dismiss on jurisdictional grounds. (Ex. D, Dkt. 25.) On August 3, 2017, again following a full briefing schedule, the Court dismissed Plaintiff's complaint on the sole basis of lack of personal jurisdiction. (Ex. D, Dkt. 33-34.) In doing so, the Court explained that:

> The Court finds that the Resort Sales Companies are not agents of Defendant for jurisdictional purposes and, moreover, even if they were, Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question thus invalidating any agency argument. "To determine if a subsidiary is acting as an agent of the parent, courts consider (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson V., L.P. v. Encore Networks, Inc.*, 2012 WL 4891696, *3 (D.N.J. Oct. 12, 2012) (*quoting Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

4

Plaintiff claims the first requirement of agency is met because the Resort Sales Companies solicited business in New Jersey on behalf of Defendant, who would otherwise have had to solicit such business itself. (ECF No. 29 at 14). The record shows that the absence of the Resort Sales Companies does not necessarily mean that Defendant performed the call itself since it could turn to independent contractors—and in fact has already done so in part. Additionally, Defendant is a real estate company but Plaintiff does not allege that said subsidiaries are authorized to make real estate transactions on Defendant's behalf. "Therefore, 'because it cannot be said that [the subsidiary] can do all of the business [the parent] could do were its own officials present in [New Jersey], an agency relationship did not exist." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (internal quotations omitted). As for the second factor, common ownership of the parent and subsidiary, Defendant concedes that the Resort Sales Companies are "wholly-owned subsidiaries of Spinnaker." (ECF No. 31 at 10). However, "forum contacts of a subsidiary corporation will not be imputed to a parent corporation without a showing of something more than mere ownership." *Leo v. Kerr-McGee*, 1996 WL 254054, *5 (D.N.J. May 10, 1996) (quo*ting Pfundstein v. Omnicom Group, Inc*., 285 N.J. Super. 245, 252 (App. Div. 1995)). Thus, common ownership of Defendant and the Resort Sales Companies alone is not dispositive.

The third factor, financial dependency, is also not met here. A subsidiary is dependent if it "needs financial support from its parent on a regular basis or for expenses other than the strategic acquisitions of other corporations." *Quality Int'l Packaging, LTD. v. Chamilia, Inc*., 2015 WL 4749156, *6 (D.N.J. Aug. 5, 2015). However, Defendant points out that the Resort Sales Companies each have separate and various bank accounts (ECF No. 31 at 12; ECF No. 25-2 Declaration of Steven F. Gooby ("Gooby Decl."), Exs. 7, 13), and credit card merchant accounts, which shows that the Resort Sales Companies receive revenue from sources other than just Defendant. (Gooby Decl., Exs. 8, 14). Thus, the Court is not persuaded that the Resort Sales Companies are financially dependent on Defendant.

Finally, the Court must determine "whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." Edelson, 2012 WL 9:18-cv-00761-BHH. No claim to original U.S. Government Works. 5 4891696 at *3. Plaintiff first asserts that Defendnat exerts control through its shared corporate officers with its subsidiaries. 5 However, as noted above, the existence of common officers between a parent and a subsidiary does not establish control. Leo, 1996 WL 254054 at *5. Plaintiff also argues that Spinnaker controls the Resort Sales Companies because it extended its contract with Southwind Management Corporation to provide payroll and human resources to cover the Resort Sales Companies thereby making personnel and operational decisions on their behalf. (ECF No. 29 at 22). However, this connection is tenuous at best and merely shows that the Resort Sales Companies and Spinnaker utilize the same third-party company for certain services. It does not prove that Defendant "controls the

5

subsidiary's marketing and operational policies." *Edelson*, 2012 WL 4891696 at *3.
*6

The Court is not satisfied with Plaintiff's argument that agency exists between the
Resort Sales Companies and Defendant and thus will not impute the former's
contacts with New Jersey to the latter. Even if Plaintiff had satisfactorily established
agency, Plaintiff fails to allege that the Resort Sales Companies made the
unsolicited telephone calls that gave rise to this action. The Complaint clearly
attributes the telephone calls to Defendant, not to its subsidiaries and Plaintiff has
not attempted to amend it. (Compl. 1 ¶¶ 2, 13, 15, 31, 32). Furthermore, during
jurisdictional discovery, after Plaintiff subpoenaed the Resort Sales Companies
(Gooby Decl., Exs. 5, 11), both Resort Sales Companies denied making the calls in
question to Plaintiff. (Gooby Decl., Ex. 12 at Nos. 6-10; Gooby Decl. Ex. 6 at Nos.
6-10). Defendant contends that these responses demonstrate that any telemarketing
calls to Plaintiff must have come from independent telemarketing companies, not
its subsidiaries. The Court finds that Plaintiff has failed to show that the Resort
Sales Companies made the alleged phone calls. Since Plaintiff's argument for
specific personal jurisdiction is based on the premise that the Resort Sales
Companies made telephone calls to Plaintiff and other class members, Plaintiff's
failure to show that the Resort Sales Companies made such calls defeats its
jurisdictional argument. Accordingly, even if the Resort Sales Companies are
agents of Defendant, the Court cannot have specific personal jurisdiction over
Defendant without the requisite minimum contacts with the forum.

(Ex. B, at *5-6.)

### *Given the Lack of Jurisdiction in New Jersey, Plaintiff Re-filed the Case in South Carolina-- Spinnaker's State Where it is Headquartered*

On March 20, 2018, Plaintiff filed the instant action in a forum where the Defendant is

headquartered, South Carolina. (Dkt. 1.) On June 15, 2018, Defendant moved to dismiss

Plaintiff's complaint arguing that the District of New Jersey's dismissal for lack of jurisdiction

bars the instant lawsuit on the basis of issue preclusion. (Dkt. 18.) As explained below,

Defendant's arguments fall apart. The issues are not identical, and Spinnaker's Motion to

Dismiss should be denied.

## III.    ARGUMENT

 "To survive a motion to dismiss, a complaint must present factual allegation that 'state a

claim to relief that is plausible on its face.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th 2014)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009)). Courts are to liberally construe complaints and take all well-pleaded facts as true, drawing all reasonable inferences in the plaintiff's favor. *See Id.* ("In applying that standard, we liberally construe Jackson's pro se complaint . . . take all facts pleaded as true, and draw all reasonable inferences in Jackson's favor.").

With respect to issue preclusion, to show that subsequent litigation is barred by a prior proceeding, "*the proponent must establish that*: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted has a full and fair opportunity to litigate the issue in the previous forum." *Martin v. American Bancorporation Retirement Plan*, 407 F.3d 643, 653 (4th Cir. 2005) (emphasis added) (citing *Sedlack*, 134 F.3d at 224.); *see also Garrett v. Ozmint*, No. C.A. 6:08-0399-MHMWM, 2008 WL 5244542, at *4 (D.S.C. Dec. 15, 2008).

As explained below, because the issues between the two cases are not identical, Defendant cannot meet its burden of establishing that these elements have been met.

**A.      Spinnaker's Motion to Dismiss first fails because the issues between the two proceedings are not identical--the test for agency for jurisdictional purposes differs meaningfully from the test used to determine "on behalf of" liability for calls made under the TCPA.**

Defendant's Motion to Dismiss should first be denied because the New Jersey court's adjudication of agency for jurisdictional purposes isn't identical to the analysis this Court (or the factfinder) will ultimately need to perform to determine whether Spinnaker can be held liable for calls made on its behalf by its agents. *See Sedlack,* 134 F.3d at 224 (requiring that "the issue sought to be precluded is identical to one previously litigated."); *see also Newport News*

*Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 583 F.2d 1273 (4th Cir. 1978) ("Relitigation of an issue is not precluded by the doctrine of collateral estoppel where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second.").

Attempting to blur the questions in each case, Defendant asserts, "That SRI never made such calls is an issue of fact that was resolved by the New Jersey district court." (Def. Mot. at 6.)[1] But this is beside the point. Plaintiff's theory isn't that Spinnaker itself made the calls directly—it alleges that Defendant *or its agents* made such calls and seeks relief against Defendant and its agents. (Compl. ¶¶ 13-14, Prayer for Relief ¶ 3.) Hence, the fact that the New Jersey court found that Spinnaker didn't make the calls is irrelevant as the fact that Spinnaker did not make the calls directly is not contested; rather, the question is whether the New Jersey court adjudicated Spinnaker's susceptibility to being held liable for calls made by its agents.

And the New Jersey court of course did nothing of the sort. As indicated above, the court found only that "the Resort Sales Companies are not agents of Defendant *for jurisdictional purposes*...." Following *Edelson V., L.P. v. Encore Networks, Inc*., the New Jersey court explained that:

> [t]o determine if a subsidiary is acting as an agent of the parent, courts consider (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson V.,*

---

[1] *See Miller Building Corporation v. NBBJ North Carolina, Inc.,* 129 N.C.App. 97, 497 S.E.2d 433, 435 (1998) ("The party seeking to apply issue preclusion has the burden to show "with clarity and certainty what was determined by the prior judgment.") (quoting 18 Moore's Federal Practice § 132.05(1)).

*L.P. v. Encore Networks, Inc.*, 2012 WL 4891696, *3 (D.N.J. Oct. 12, 2012) (*quoting Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

(Ex. B, at *3.) This analysis differs materially from the test a court must use to determine whether a principal can be held liable under the TCPA for calls made by its agent on its behalf. "According to the FCC, vicarious liability under the TCPA is governed by the federal common law of agency, 'including not only formal agency, but also principals of apparent authority and ratification.'" *Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243, 252 (4th Cir. 2018) (quoting *Dish Network, LLC* 28 FCC Rcd. at 6582-84); *see also Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 742 (N.D. Ill. 2014) (stating that "The FCC further explained that a seller may face vicarious liability 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. '") Of course, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* (quoting Restatement (Third) of Agency § 4.01(1) (2006)). "A party 'may ratify an act by failing to object to it or to repudiate it,' or by 'receiving or retaining [the] benefits it generates.'" *Id.*

There can be little question that the New Jersey court was never tasked with deciding whether any entity was granted actual or apparent authority to make calls on behalf of Spinnaker or whether Defendant Spinnaker ratified the calls by knowingly retaining benefits of the calls.[2] Hence, the issue at hand is distinct from the issue in the previous proceeding, thus precluding any defense based on supposed issue preclusion.

**B.      The prior court never reached a decision on the merits of the TCPA violations—thus, it cannot be reasonably said that the issue has been actually determined.**

---

[2] This isn't merely theoretical. Plaintiff specifically alleges that she began receiving calls from callers identifying themselves as "Spinnaker Resorts." (Compl. ¶ 21.) Further, she alleges that Defendant and/or its agents placed the calls in question. (*Id.* ¶¶ 13-14.)

Defendant next argues that the prior court determined that it did not make the calls at issue. (Def. Mot. at 6.) Again, this misstates the issue. "Collateral estoppel treats as final only those issues 'actually and necessarily determined' in the prior suit." *Combs v. Richardson*, 838 F.2d 112, 114 (4th Cir. 1988). Given the difference between the issues presented in both cases it cannot be seriously maintained that Defendant's potential TCPA liability for calls made on its behalf by its agents was actually adjudicated in the prior proceeding. While the previous court did state that Defendant did not make the calls in question, that is not an issue in this case. Rather, to succeed on this element Defendant must show that the issue of its potential liability for calls made by its agents on its behalf was actually addressed by the New Jersey court. Defendant cannot possibly do so, as by the language of the Order itself the New Jersey court merely found "that the Resort Sales Companies are not agents of Defendant *for jurisdictional purposes*." (Ex. B, at *5 (Emphasis added).) *See Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 653 (4th Cir. 2005) (refusing to dismiss on grounds of issue preclusion where issue wasn't actually adjudicated in prior proceeding).

As such, the Court should find that the issue of Defendant's vicarious liability under the TCPA has yet to be determined.

**C.     Since the issue at hand was not presented to the prior court it follows that it could not have been a critical and necessary part of the previous decision.**

Defendant next argues that the New Jersey court's finding that Spinnaker never made calls to the Plaintiff was essential to the New Jersey district court's decision. (Def. Mot. at 6.) Again, this is not the issue in the case. As explained, a determination that Spinnaker did not directly make the calls at issue does not foreclose the issue of TCPA liability. Spinnaker may still be adjudged by a fact finder to have "on behalf of" liability under the TCPA for any calls

made by its agents.

Further, neither ratification nor apparent authority is a valid basis to impute an agent's contacts for the purposes of personal jurisdiction; thus, neither was within the purview of the New Jersey court's decision. Consequently, the prior court never addressed these issues, let alone found them to be critical or necessary to its consideration of the jurisdictional question.

**D.    Plaintiff does not dispute that the prior judgment was final and valid.**

Plaintiff has no objection to the fourth element of issue preclusion. The prior court's order was final and valid for jurisdictional purposes only. It is important to note, however, that this in no way gives rise to any argument based on *res judicata*. As Federal Rule of Civil Procedure 41(b) makes clear, a dismissal based on jurisdictional grounds does not constitute a decision on the merits.

**E.    Because the question of whether Spinnaker could be held liable for the calls placed by its potential agents was not at issue in the New Jersey case, Plaintiff has not been afforded a fair opportunity to litigate that issue.**

Defendant argues that Plaintiff had a full and fair opportunity to litigate the issue at hand. (Def. Mot. at 5-7). Again this misconstrues the prior proceedings.

"[O]ne general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). "Where the non-moving party has had no opportunity to litigate particular issues, then collateral estoppel may not apply to them." *S.E.C. v. Resnick*, 604 F.Supp.2d 773, 780 (D. Md. 2009); *see also Cudmore v. Howell*, 232 B.R. 335, 339 (E.D.N.C. 1999) ("The party opposing issue preclusion has the burden 'to show that there was no full and fair opportunity to litigate the issues in the first case.'").

11

Discovery in the New Jersey case was four month's long and was limited to jurisdictional issues--not the merits. As such, Plaintiff was not afforded an opportunity to gather facts relevant to the question of whether Spinnaker could be held liable for calls made by its agents or independent contractors. Instead, Plaintiff's fact-finding was restricted to discovery related to the jurisdictional questions: (1) whether Spinnaker's subsidiaries did business in New Jersey that would otherwise be performed by Spinnaker, (2) whether there is common ownership of the parent and subsidiaries, (3) whether there is financial dependency, and (4) whether Spinnaker interferes with its subsidiary's personnel. Without the ability to obtain discovery related to actual or apparent authority, or any ratification by Spinnaker of any calls, it cannot be concluded that Plaintiff had a full and fair opportunity to litigate such issues before the New Jersey court.

## IV.    CONCLUSION

Defendant Spinnaker fails to satisfy a single element necessary to invoke the doctrine of issue preclusion. Determining agency for jurisdictional questions differs from the adjudication of agency for purposes of determining "on behalf of" liability under the TCPA. As a consequence, the issues aren't identical, they weren't adjudicated before, were not central to the New Jersey court's ruling, and Plaintiff wasn't provided a fair opportunity to litigate them.

As such, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss based on issue preclusion, allow the case to proceed to discovery, and award such additional relief as the Court deems necessary, reasonable, and just.[3]

---

[3] To the extent the Court disagrees, Plaintiff respectfully requests leave to amend to cure any defects.

Respectfully Submitted,

Dated: June 29, 2018

**HENNA CARDENAS**, individually and on behalf of all others similarly situated,

By: __/s/Margaret A. Collins__
One of Plaintiff's Attorneys

Margaret A. Collins
meg@pslawsc.com
Palmetto State Law Group
1087 Harbor Drive, Suite B
West Columbia, SC 29169
Telephone: 803-708-7442
Facsimile: 803-753-9352

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Classes*

*\*pro hac vice*

## Certificate of Service

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's CM/ECF System on counsel for all parties who have appeared in this matter.

Dated: June 29, 2018                 __/s/Margaret A. Collins__

13